Citation Nr: 1101578 
Decision Date: 01/13/11 Archive Date: 01/20/11

DOCKET NO. 03-15 113 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the 
Commonwealth of Puerto Rico


THE ISSUE

Entitlement to service connection for an acquired psychiatric 
disorder, claimed as dementia. 


REPRESENTATION

Appellant represented by: Daniel Krasnegor, Esq. 


ATTORNEY FOR THE BOARD

T. S. Kelly, Counsel




INTRODUCTION

The Veteran had active service from September 1967 to November 
1988. 

This matter originally came before the Board of Veterans' Appeals 
(Board) on appeal from a December 2001 rating determination of 
the Department of Veterans Affairs (VA) Regional Office (RO) 
located in San Juan, Puerto Rico. 

In October 2005, the Board denied service connection for an 
acquired psychiatric disorder. The Veteran subsequently appealed 
the decision. In December 2006, the parties filed a Joint Motion 
for Remand. In January 2007, the United States Court of Appeals 
for Veterans Claims (Court) vacated the Board decision and 
remanded the appeal for readjudication following evidentiary 
development consistent with the parties' joint motion.

In September 2007, pursuant to the Joint Remand, the Board 
remanded this matter for further development. 

Thereafter, the Board sent this matter for further development to 
include obtaining a VHA opinion. The requested opinion has been 
obtained and the matter is now ready for appellate review. 


FINDING OF FACT

The Veteran's current organic personality syndrome with dementia 
is of service origin. 


CONCLUSION OF LAW

Organic personality syndrome with dementia was incurred in 
service. 38 U.S.C.A. §§ 1110, 1131 (West 2002 & Supp. 2010); 
38 C.F.R. §§ 3.102, 3.303, 3.306 (2010). 


REASONS AND BASES FOR FINDING AND CONCLUSION


Dementia

Service connection will be granted if it is shown that the 
veteran suffers from disability resulting from an injury suffered 
or disease contracted in line of duty, or for aggravation of a 
preexisting injury suffered or disease contracted in line of 
duty, in the active military, naval, or air service. 38 U.S.C.A. 
§§ 1110, 1131; 38 C.F.R. § 3.303.

Service connection requires competent evidence showing: (1) the 
existence of a present disability; (2) in-service incurrence or 
aggravation of a disease or injury; and (3) a causal relationship 
between the present disability and the disease or injury incurred 
or aggravated during service. Shedden v. Principi, 381 F.3d 
1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. 
App. 498 (1995).

Under 38 C.F.R. § 3.303(b), an alternative method of establishing 
the second and third Shedden/Caluza element is through a 
demonstration of continuity of symptomatology. Barr v. 
Nicholson, 21 Vet. App. 303 (2007); see Savage v. Gober, 10 Vet. 
App. 488, 494-95 (1997); see also Clyburn v. West, 12 Vet. App. 
296, 302 (1999). Continuity of symptomatology may be established 
if a claimant can demonstrate (1) that a condition was "noted" 
during service; (2) evidence of post-service continuity of the 
same symptomatology; and (3) medical or, in certain 
circumstances, lay evidence of a nexus between the present 
disability and the post-service symptomatology. Savage, 10 Vet. 
App. at 495-96; see generally Hickson v. West, 12 Vet. App. 247, 
253 (1999) (lay evidence of in-service incurrence sufficient in 
some circumstances for purposes of establishing service 
connection); 38 C.F.R. § 3.303(b).

Lay persons are not competent to opine as to medical etiology or 
render medical opinions. Barr v. Nicholson; see Grover v. West, 
12 Vet. App. 109, 112 (1999); Espiritu v. Derwinski, 2 Vet. App. 
492, 494 (1992). Lay testimony is competent, however, to 
establish the presence of observable symptomatology and "may 
provide sufficient support for a claim of service connection." 
Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Falzone v. 
Brown, 8 Vet. App. 398, 405 (1995) (lay person competent to 
testify to pain and visible flatness of his feet); Espiritu, 2 
Vet. App. at 494- 95 (lay person may provide eyewitness account 
of medical symptoms).

The Board may not reject the credibility of the veteran's lay 
testimony simply because it is not corroborated by 
contemporaneous medical records. Buchanan v. Nicholson, 451 F.3d 
1331, 1336 (Fed. Cir. 2006).

"Symptoms, not treatment, are the essence of any evidence of 
continuity of symptomatology." Savage, 10 Vet. App. at 496 
(citing Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991). Once 
evidence is determined to be competent, the Board must determine 
whether such evidence is also credible. See Layno, supra 
(distinguishing between competency ("a legal concept determining 
whether testimony may be heard and considered") and credibility 
("a factual determination going to the probative value of the 
evidence to be made after the evidence has been admitted").

Service connection may be granted for any disease diagnosed after 
discharge, when all the evidence, including that pertinent to 
service, establishes that the disease was incurred in service. 
38 C.F.R. § 3.303(d). If a chronic disease is identified in 
service, manifestations of the same disease at any time, no 
matter how remote, after service will be service connected. 
38 C.F.R. § 3.303(b).

Every veteran shall be taken to have been in sound condition when 
examined, accepted and enrolled for service, except as to defects 
noted at the time of the examination, acceptance and enrollment, 
or where clear and unmistakable evidence or medical judgment is 
such as to warrant a finding that the disease or injury existed 
before acceptance and enrollment, and was not aggravated by such 
service. 38 U.S.C.A. § 1111.

In order to rebut the presumption of sound condition under 
38 U.S.C. § 1111, the government must show by clear and 
unmistakable evidence both that the disease or injury existed 
prior to service, and that the disease or injury was not 
aggravated by service. Wagner v. Principi, 370 F.3d 1089 (Fed. 
Cir. 2004).

To satisfy the second requirement for rebutting the presumption 
of soundness, the government must rebut a statutory presumption 
of aggravation by showing, by clear and unmistakable evidence, 
either that (1) there was no increase in disability during 
service, or (2) any increase in disability was "due to the 
natural progression" of the condition. Joyce v. Nicholson, 443 
F.3d 845, 847 (Fed. Cir. 2006).

The clear and unmistakable evidentiary standard applies to the 
burden to rebut the presumption, but this standard does not 
require the absence of conflicting evidence. Kent v. Principi, 
389 F.3d 1380, 1383 (Fed. Cir. 2004).

The provisions of 38 U.S.C.A. § 1153 provide criteria for 
determining when a pre-existing disability has been aggravated. 
Under the statute:

A preexisting injury or disease will be considered to have been 
aggravated by active military, naval, or air service, where there 
is an increase in disability during such service, unless there is 
a specific finding that the increase in disability is due to the 
natural progress of the disease.

Temporary or intermittent flare-ups during service of a 
preexisting injury or disease are not sufficient to be considered 
"aggravation in service" unless the underlying condition, not 
just the symptoms, has worsened. Hunt v. Derwinski, 1 Vet. App. 
292, 297 (1991).

VA's implementing regulation provides that:

(a) General. A preexisting injury or disease will be considered 
to have been aggravated by active military, naval, or air 
service, where there is an increase in disability during such 
service, unless there is a specific finding that the increase in 
disability is due to the natural progress of the disease.

(b) Wartime service; peacetime service after December 31, 1946. 
Clear and unmistakable evidence (obvious or manifest) is required 
to rebut the presumption of aggravation where the preservice 
disability underwent an increase in severity during service. 
This includes medical facts and principles which may be 
considered to determine whether the increase is due to the 
natural progress of the condition. Aggravation may not be 
conceded where the disability underwent no increase in severity 
during service on the basis of all the evidence of record 
pertaining to the manifestations of the disability prior to, 
during and subsequent to service.

(1) The usual effects of medical and surgical treatment in 
service, having the effect of ameliorating disease or other 
conditions incurred before enlistment, including postoperative 
scars, absent or poorly functioning parts or organs, will not be 
considered service connected unless the disease or injury is 
otherwise aggravated by service.

(2) Due regard will be given the places, types, and circumstances 
of service and particular consideration will be accorded combat 
duty and other hardships of service. The development of 
symptomatic manifestations of a preexisting disease or injury 
during or proximately following action with the enemy or 
following a status as a prisoner of war will establish 
aggravation of a disability.

38 C.F.R. § 3.306(b).

The Board notes that service connection is not currently in effect 
for the left carotid artery aneurysm or residuals thereof. 

While in service, the Veteran was found to have a left internal 
carotid artery aneurysm. In January 1988, the Veteran underwent a 
left craniotomy and clipping of the aneurysm. In July 1989, within 
one year of his release from service, the Veteran was diagnosed as 
having organic personality syndrome. 

At the time of a July 2003 VA examination, the Veteran was diagnosed 
as having a history of intracranial aneurysm, left internal carotid 
artery, surgically clipped in 1988, more likely than not congenital 
in nature and not incurred during active military service and not due 
to mild head trauma in 1985, while on active duty. The examiner 
indicated that there was no evidence of dementia on gross examination 
nor by neuropsychological testing done in March 2001. The examiner 
further indicated that the Veteran had a normal neurological 
examination. 

In July 2007, the Board of Veterans Appeals remanded the above 
issue for further development, to include a VA examination. 
Following examination, the examiner was requested to provide the 
following opinions: For each diagnosis, the examiner was to 
state whether it was at least as likely as not (by a probability 
of 50 percent), more likely than not (by a probability higher 
than 50 percent), or less likely than not (by a probability lower 
than 50 percent) that it was etiologically related to active 
service. The examiner was to include the basis for each opinion 
in the examination report. Finally, the examiner was asked to 
indicate whether a psychosis was manifested within one year after 
the Veteran's separation from active duty on November 30, 1988. 
In particular, the examiner was to indicate whether the July 25, 
1989 VA neuropsychological report containing a diagnosis of 
organic personality syndrome was evidence of the presence of a 
psychosis. If it was not possible to give the requested 
opinions, the examiner was to explain in the examination report 
why it was not possible.

The Veteran was afforded the requested examination in June 2008. 
Following examination, the examiner rendered a diagnosis of 
dementia due to medical condition. In response to the above 
questions, the examiner provided the following: July 25, 1989 VA 
neuropsychological report containing a diagnosis of organic 
personality syndrome is evidence of the presence of a psychosis 
is caused by or a result of the cerebral aneurysm in 1988.

Rationale: This Veteran underwent cerebral surgery in 1988. 
Surgery that as per report involved the frontal lobe in which the 
personality features are presented. The organic personality 
disorder diagnosed in 1989 was probably a psychosis. The Veteran 
due to the type of surgery in frontal lobe could developed 
psychosis during the evaluation of November 30, 1998. Most after 
this event, the Veteran developed changes in his personality and 
later developed dementia. In our opinion the dementia was caused 
by the service connected condition above mentioned. The Veteran 
with dementia and personality changes since he underwent surgery 
for aneurysm. 

The Board found the opinion was insufficient to properly decide the 
Veteran's claim and requested a VHA opinion in March 2010. The Board 
requested that the reviewer provide the following opinions: For each 
diagnosis, the examiner was to state whether it was at least as 
likely as not (by a probability of 50 percent), more likely than not 
(by a probability higher than 50 percent), or less likely than not 
(by a probability lower than 50 percent) that it was etiologically 
related to active service. The examiner was to include the basis for 
each opinion in the examination report. The examiner was also 
requested to indicate whether a psychosis was manifested within one 
year after the Veteran's separation from active duty on November 30, 
1988. The examiner was further requested to indicate whether the 
July 25, 1989 VA neuropsychological report containing a diagnosis of 
organic personality syndrome was evidence of the presence of a 
psychosis. If the organic personality was determined to demonstrate 
the presence of psychosis, the examiner was then requested to render 
an opinion, as to what, if any, relationship, this had to the left 
internal carotid artery aneurysm found in service and/or the 
inservice surgery performed in January 1988. If a relationship was 
found to exist, the examiner was then requested to indicate whether 
it was it at least as likely as not that the development of the 
organic personality syndrome and dementia were the usual effects of 
the inservice surgery and/or medical treatment used to ameliorate the 
left internal carotid artery aneurysm.

In a May 2010 report, a VA neurologist from the Charleston, South 
Carolina VAMC stated that the Veteran's severe organic brain 
disease and psychological impairment was temporally related to 
the aneurysm and subsequent surgery as evidenced by the Veteran's 
service medical records. He noted that the neuropsychological 
testing indicated the onset of the disabling problems within 
several weeks of the surgery and which persisted years later as 
demonstrated by formal testing. He indicated that it was his 
opinion that a specific diagnosis of psychosis was not described 
within one year following the Veteran's separation from active 
duty on November 30, 1988. However, he stated that the Veteran 
did experience incapacitating psychological impairment consistent 
with frontal dementia which was related in time to the aneurysm 
surgery, and which occurred within one year of discharge from 
active duty. He indicated that a formal review of the medical 
record by a psychiatrist might provide additional helpful 
information. 

In his June 2010 letter, a staff psychiatrist from the Charleston 
VAMC indicated that other psychiatric syndromes may have 
developed as a result of carotid aneurysm and neurosurgical 
repair. He noted that there was evidence that the Veteran had 
personality changes after the surgery as reflected by the 
neuropsychological assessment. He opined that the contemporary 
diagnosis of these changes would be "personality change due to 
general medical condition" (carotid aneurysm and neurosurgical 
repair) utilizing DSM-IV.

He indicated that the "personality changes" as described 
included decreased social judgment, apparent indifference, and 
reduced activities of daily living. He also noted that there was 
a question of fiduciary competence. The examiner further stated 
that these symptoms might also raise the question of an 
underlying dementia. He observed that the Veteran was also noted 
to forget names and to have possible short-term memory deficits. 

The psychiatrist stated that it appeared highly unlikely that the 
Veteran had experienced psychotic symptoms at any time much less 
psychosis associated with active service. He indicated that it 
was more likely that he suffered from dementia associated with 
the carotid aneurysm and involving, in particular, frontal 
cerebral lobe deficits. 

In a July 2010 letter to the Chief of Staff at the Charleston 
VAMC, the Board noted the May and June 2010 reports, and stated 
that neither examiner had indicated whether the above diagnoses 
were the usual effects of the inservice surgery and/or medical 
treatment used to ameliorate the left internal carotid artery 
aneurysm. The Board noted that such an opinion was necessary in 
order to properly evaluate the Veteran's claim. 

In an August 2010 report, the VA psychiatrist who prepared the 
June 2010 report indicated that the diagnoses of personality 
change due to general medical condition or dementia secondary to 
surgical repair of the left internal carotid artery aneurysm 
should not be considered usual consequences. The examiner cited 
several sources to support his statement. He then stated that it 
was his opinion that specific psychiatric syndromes were not a 
usual complication of the neurological repair that was undertaken 
for the Veteran. He noted that this would contrast with the 
effects of a ruptured aneurysm which would likely lead to 
neuropsychiatric complications. 

In an August 2010 addendum report, the May 2010 examiner, in 
response to the Board's question, indicated that complications 
were not ordinarily considered to be "usual" effects of any 
particular intervention. He noted that a variety of 
complications represented the potential to develop a wide range 
of undesirable side effects which might occur during many 
invasive procedures. He stated that most procedures were not 
considered to be completely risk free. He noted that 
complications were not considered "usual" since all efforts 
were made to prevent their occurrence. However, despite best 
efforts, complications related to the underlying pathology and/or 
procedure can and did occur, some more commonly than others. 

He noted that following surgery, the Veteran demonstrated clear 
and convincing evidence of organic personality syndrome with 
features of dementia. He indicated that although there was no 
mention of aneurysm rupture or leakage, the potential existed for 
arterial spasm to occur in proximity to the aneurysm and critical 
brain structures during the surgical procedure. The examiner 
noted that brain injury might follow such ischemic injury or 
other unidentifiable event leading to a variety of many different 
possible clinical manifestations, including changes in 
personality. Such complications of aneurysm surgery represented 
well recognized clinical phenomena familiar to experienced 
practicing neurologists and neurosurgeons, which might occur even 
when procedures were performed with great expertise. 

He noted that there was no report of organic personality syndrome 
or dementia in the medical record prior to the Veteran being 
diagnosed with cerebral aneurysm, undergoing brain surgery, and 
receiving post-operative care. He stated that the Veteran's 
organic personality syndrome including dementia was more likely 
than not related in time to his active duty service. He noted 
that although the Veteran's cerebral aneurysm was not caused by 
active duty, it was in fact diagnosed while he was on active 
duty. He stated that it was more likely than not that the 
organic personality syndrome with features of dementia was 
associated with the underlying aneurysm and subsequent brain 
surgery performed while the Veteran was on active duty. 

Resolving reasonable doubt in favor of the Veteran, service 
connection is warranted for organic personality syndrome with 
features of dementia. The Board notes that the Veteran underwent 
surgery for removal of the carotid aneurysm in service and that 
service connection is not currently in effect for the carotid 
aneurysm, having been previously denied. However, the June 2008 
VA examiner and the examiners who prepared the VHA opinions have 
indicated that the Veteran developed organic personality syndrome 
with dementia as a result of the inservice aneurysm surgery, with 
the onset following the surgery, which was within the Veteran's 
period of active service. Moreover, the VA psychiatrist, in his 
August 2010 addendum opinion, indicated that the specific 
psychiatric syndromes that the Veteran developed, namely 
personality change due to general medical condition or dementia 
secondary to surgical repair of the left carotid artery aneurysm, 
were not considered usual consequences of the surgery. In 
addition, the VA neurologist, in his August 2010 addendum report, 
also indicated that complications were not ordinarily considered 
to be "usual" effects of any particular intervention, and that 
it was more likely than not that the organic personality syndrome 
with features of dementia was associated with the underlying 
aneurysm and subsequent brain surgery performed while the Veteran 
was on active duty. 

As the Veteran's organic personality syndrome and dementia have 
been shown to have had their onset in service and have not been 
shown to be the usual effects of the inservice surgery and/or 
medical treatment used to ameliorate the left internal carotid 
artery aneurysm, service connection is warranted for organic 
personality syndrome with dementia. 




Duties to Assist and Notify

The Veterans Claims Assistance Act of 2000 (VCAA) and 
implementing regulations impose obligations on VA to provide 
claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 
5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R §§ 3.102, 
3.156(a), 3.159, 3.326(a) (2010).

Proper VCAA notice must inform the claimant of any information 
and evidence not of record (1) that is necessary to substantiate 
the claim; (2) that VA will seek to provide; (3) and that the 
claimant is expected to provide. 38 U.S.C.A. § 5103(a); 
38 C.F.R. § 3.159(b)(1).

For claims pending before VA on or after May 30, 2008, 38 C.F.R. 
§ 3.159 has been amended to eliminate the requirement that VA 
request that a claimant submit any evidence in his or her 
possession that might substantiate the claim. 73 Fed. Reg. 
23,353 (Apr. 30, 2008).

The Court has also held that that the VCAA notice requirements of 
38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five 
elements of a service connection claim. Those five elements 
include: 1) Veteran status; 2) existence of a disability; 3) a 
connection between the Veteran's service and the disability; 4) 
degree of disability; and 5) effective date of the disability. 
Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

The VCAA is not applicable where further assistance would not aid 
the appellant in substantiating his claim. Wensch v. Principi, 
15 Vet App 362 (2001); see 38 U.S.C.A. § 5103A(a)(2) (Secretary 
not required to provide assistance "if no reasonable possibility 
exists that such assistance would aid in substantiating the 
claim"); see also VAOPGCPREC 5- 2004 (the notice and duty to 
assist provisions of the VCAA do not apply to claims that could 
not be substantiated through such notice and assistance). In 
view of the Board's favorable decision with regard to the claim, 
further assistance is not required to substantiate that element 
of the claim. 


ORDER

Service connection for organic personality syndrome with dementia 
is granted. 




____________________________________________
MARY GALLAGHER
Veterans Law Judge, Board of Veterans' Appeals


 Department of Veterans Affairs